[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 08, 2002
THOMAS K. KAHN
CLERK

_____

No. 99-11327

_____

D.C. Docket No. 98-00298-CR-J-21A

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK JACOB JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 8, 2002)**

Before BLACK and HULL, Circuit Judges, and HANCOCK[*], District Judge.

PER CURIAM:

Defendant Mark Jacob Jones appeals his sentence based on his conviction

for bank fraud in violation of 18 U.S.C. §§2 and 1344 and making false claims

against the United States in violation of 18 U.S.C. §287. Because this Court finds

_____

[*] Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

that the district court neither erred in its order of an immediate, lump sum restitution payment, nor in its upward departure from the relevant United States Sentencing Guidelines ("USSG"), the judgment of the district court is due to be affirmed.

## I.  Factual and Procedural History

In July and August of 1998, Defendant Jones filed false tax returns on behalf of a number of third parties, persuaded others to forge the third parties' endorsements on the refund checks, and deposited these checks into his accounts at two federally-insured credit unions.  In November of 1998, a federal grand jury returned a superceding indictment[1] against Jones containing one count for bank fraud and forty-eight counts for making false claims against the United States.  Pursuant to a plea agreement, Jones pled guilty to the one count for bank fraud and one count for making a false claim against the United States.

The matter came on for sentencing on April 16, 1999.  The Presentence Investigation Report ("PSR"), after allowing a two-level reduction for acceptance of responsibility, calculated the total offense level at twelve.  Based upon a 1988 manslaughter conviction and a 1989 conviction for grand larceny and possession of stolen property, the PSR calculated Defendant's criminal history at Category II,

---

[1]  The original indictment was returned on August 20, 1998.

2

although counsel for Defendant argued that it should be at Category I. During the sentencing hearing, the district court pointed out that it was considering an upward departure, largely on the basis that: (1) a Category II criminal history seriously *underrepresented* Defendant's actual criminal history for many years; and (2) Defendant's conduct while in pretrial custody exhibited an attitude and approach to authority suggesting a strong likelihood of continued criminal misconduct. The district court also stated that it was considering denying Defendant a two-level reduction for acceptance of responsibility because his post-arrest conduct demonstrated that Defendant was not remorseful or contrite, and that Defendant had not otherwise accepted responsibility for his conduct. The sentencing was continued until April 23, 1999.

During the April 23, 1999 sentencing hearing, the district court did conclude that Defendant was not entitled to a two-level reduction for acceptance of responsibility and therefore determined that the total offense level was fourteen. The court also concluded that Category II did seriously and significantly underrepresent Defendant's actual criminal history and his likelihood of recidivism, warranting an upward departure. In determining the extent of the departure, the court vacillated between an imprisonment range produced by a criminal history of Category III and Category IV. The court finally determined

3

that Defendant's criminal history more appropriately should be viewed as Category IV and that a custodial sentence of 33 months should be imposed.[2] The court then sentenced Jones to a term of 33 months for each of the two counts, the terms to run concurrently, and to supervised release for terms of five years on the bank fraud count and three years on the false claim count, the terms to run concurrently[3] upon his release from imprisonment. The court further ordered Jones to immediately pay lump sum restitution in the amount of $36, 689.61[4] to the Internal Revenue Service. This appeal followed.

## II. Discussion

---

[2] This sentence is within the guideline imprisonment range of 27-33 months for a total offense level of fourteen and a criminal history Category IV.

[3] The written order of judgment incorrectly reflects that the term of supervised release for the false claim count was five years.

[4] The written order of judgment correctly reflects this amount but at another point incorrectly reflects the amount of restitution due as $39,689.61. This discrepancy is not an issue on appeal; in any event, the orally-pronounced $36,689.91 controls. *See U.S. v. Khoury*, 901 F.2d 975, 977 (11th Cir. 1990).

Defendant Jones raises two issues on appeal.[5]  First, Jones argues that the district court erred when it ordered him to make restitution in an immediate, lump sum payment.  Second, he argues that the court further erred when it imposed a two-category upward departure from his criminal history category under the USSG.

## A.  Restitution Issue

Jones does not dispute that the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664, required the district court to order full restitution without regard to his economic circumstances.  Jones contends, however, that under the MVRA, the court must have considered his financial resources, projected earnings, and fiscal obligations before specifying the manner in which he would pay restitution.  He argues that the district court committed plain error when it failed to consider or make any factual findings as to whether he had the financial ability to pay an immediate lump sum restitution.

---

[5]  Jones raises a third issue:  whether the district court committed plain error by ordering a five-year term of supervised release on the false claim count when the district judge entered the written judgment in this case on April 28, 1999, as opposed to the three-year term that the judge orally pronounced when he imposed sentence on April 23, 1999.  As both parties acknowledge, when the orally-imposed sentence differs from the written order of judgment, the oral sentence controls. *See Khoury*, 901 F.2d at 977.  Therefore, the oral judgment of three years supervised release imposed at the sentencing hearing trumps the five-year term contained in the written judgment.  Upon remand the clerk of the district court is DIRECTED to correct the written judgment entered April 28, 1999 to reflect that the term of supervised release for the false claim count is three years rather than the five years reflected thereon.

Because Jones did not raise this issue in the district court, this Court reviews the lump sum restitution judgment for plain error only. *See U.S. v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001). In order to reverse for plain error, this Court must find that: (1) the district court erred in its determination; (2) the error was plain or obvious; and (3) the error affected substantial rights in that it was prejudicial and not harmless. *See U.S. v. Chisolm*, 73 F.3d 304, 307 (11th Cir. 1996). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. U.S.*, 520 U.S. 461, 467 (1997) (quoting *U.S. v. Olano*, 507 U.S. 725, 732-34 (1993)).

At the sentencing hearing, the district court ordered restitution in the full amount of $36,689.91 to the Internal Revenue Service and then, "[b]ased on the financial status of the defendant," waived imposition of a fine and costs of incarceration. Although the court did not further discuss the terms of the ordered restitution, the PSR contained a thorough analysis of Jones' financial status and ability to pay. Jones did not challenge the data in the PSR, nor offer any evidence of his economic situation, even though the MVRA places squarely on the defendant the burden of demonstrating his financial resources and the needs of his

6

dependents.[6]  The written judgment indicated that payment was due in full immediately.

The MVRA mandates that a sentencing court order restitution in the full amount, denying the court any discretion to contemplate the defendant's financial situation in making such order.  Once restitution has been ordered, the MVRA instructs the court to consider certain economic factors in determining the manner and schedule by which a defendant must pay restitution.[7]  Defendant Jones would read an additional requirement into this directive:  the sentencing court must make factual findings on the record regarding these factors.  Jones offers decisions by the

---

[6]  18 U.S.C. §3664(e) provides that:
Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. *The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant.* The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.
(emphasis added).

[7]  18 U.S.C. §3664(f)(2) lays out these factors:
Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of -
(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
(B) projected earnings and other income of the defendant; and
(C) any financial obligations of the defendant; including obligations to dependents.

7

Fifth and Third Circuits in support of his position.  *See U.S. v. Meyers*, 198 F.3d

160 (5th Cir. 1999); *U.S. v. Coates*, 178 F.3d 681 (3d Cir. 1999).  *Meyers* is

factually distinguishable from the case at bar because in that case, the Fifth Circuit

found that the district court plainly erred in ordering immediate payment of

restitution when the PSR showed that the defendant had a negative net worth and

"absolutely no ability" to pay restitution immediately.  198 F.3d at 169.  In

contrast, the PSR in the instant case indicated that Jones:  (1) may own a one-half

interest in a house worth $19,000; (2) has $20,000 in two bank accounts (stemming

from his illegal activities) and; (3) has liabilities of only $2,200 and no monthly

financial obligations.  The PSR also revealed that the government located

approximately $9,905 at two credit unions, which was forfeited to the United

States to reimburse the victim.  Furthermore, the defense failed to proffer any

evidence during the sentencing proceeding to controvert the PSR's assessment of

Jones' financial status.

In *Coates*, the Third Circuit interpreted the MVRA to require factual

findings on the record and thus held that the district court plainly erred in failing to

expressly consider the MVRA factors before ordering restitution.  *See* 178 F.3d

681.  However, this Court declines to follow the reasoning of *Coates*.  Instead, this

Court finds that while the district court did not make explicit findings regarding

8

Jones' financial status, the court appropriately relied upon the information in the probation office's PSR, unchallenged during the sentencing proceedings, that Jones had resources available to him to make immediate payment.

While final decisions regarding restitution lie clearly within the realm of the sentencing court's discretion, the probation office, rather than the sentencing court, bears responsibility for determining the nuts and bolts of the restitution issue. This approach is entirely consistent with the ordinary allocation of duty to the probation office in sentencing proceedings. The probation office culls through and evaluates the detailed, often voluminous information on a criminal defendant in preparing the PSR, thereby permitting the court to focus its attention on making sentencing decisions. *Coates* seems to place an unreasonable and unnecessary burden on sentencing courts, one that this Court is reluctant to impose given limited judicial time and resources.

As noted earlier, Jones did not object to the data in the PSR, nor offer any evidence of his financial status and ability to make restitution. Therefore, this Court holds that the information in the PSR sufficiently sustains the district court's decision that Jones should make restitution in an immediate lump sum payment, and the court did not plainly err when it ordered such payment without making factual findings on the record as to Jones' financial status.

**B. Upward Departure Issue**

Jones also argues that the district court committed reversible error when it imposed a two-category upward departure from his criminal history category under the USSG. He maintains that: (1) his criminal history fails to justify the two-category upward departure; (2) the court improperly considered factors that are proscribed under the USSG to justify this deviation; and (3) the court determined that category III was appropriate, and therefore abused its discretion by subsequently escalating to category IV. A district court's decision to depart from the guidelines is reviewed for abuse of discretion. *See U.S. v. Hernandez*, 160 F.3d 661, 668 (11th Cir. 1998) (citing *Koon v. U.S.*, 518 U.S. 81, 91 (1996)).

First, Jones asserts that the upward departure in his criminal history category was unwarranted. The USSG expressly authorizes a court to depart upward from a defendant's sentencing guidelines range where the defendant's criminal history category fails to adequately reflect the seriousness of his past criminal conduct or the likelihood of recidivism. *See* USSG §4A1.3.[8] Apart from the convictions

---

[8] The relevant portion of USSG §4A1.3 reads as follows:

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, *but is not limited to*, information concerning: (a) prior sentence(s) not used in computing the criminal history category (e.g.,

10

utilized in establishing Defendant's criminal history as Category II, the record reflects that the district court had before it significant, reliable information which supports an upward departure from a criminal history Category II. This information includes convictions for attempted burglary (age 16); criminal mischief (police found Defendant with burglary tools near large hole at rear of building - age 16); attempted criminal trespass (originally burglary - age 17); disorderly conduct (originally grand larceny and possession of stolen property - age 17); trespass (age 19); criminal facilitation (originally criminal possession of weapon, stolen firearms, and controlled substance - age 20); disorderly conduct (originally resisting arrest - 25); and disorderly conduct (originally possession of a controlled substance - age 31). While these juvenile convictions are not similar to the convictions in this case and are too remote to use in calculating Jones' criminal history category, they represent serious criminal conduct, and the district court properly considered them in determining whether an upward departure was

sentences for foreign and tribal offenses);
(b) prior sentence(s) of substantially more than a year imposed as a result of independent crimes committed on different occasions;
(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;
(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;
(e) prior similar adult criminal conduct not resulting in a criminal conviction. (emphasis added).

11

warranted and, if so, to what category. *See U.S. v. Williams*, 989 F.2d 1137 (11th Cir. 1993). The district court did not abuse its discretion in departing to a Category IV criminal history.

Second, Jones argues that the court relied upon impermissible factors in its decision to depart upwards. He correctly states that an upward departure must be based on factors relating to past criminal conduct as opposed to the offense for which the defendant is being sentenced. *See U.S. v. Adudu*, 993 F.2d 821, 824 (11th Cir. 1993). The rationale behind such policy is that circumstances of the current offense are evaluated in calculating the offense level, and, therefore, consideration of these same factors for the criminal history category would unfairly count them twice. *See U.S. v. Jones*, 948 F.2d 732, 737 (D.C. Cir. 1991), *cited in Adudu*, 993 F.2d at 824. In its discussion of Jones' likelihood for recidivism, the district court simply noted that Jones continued, through his current convictions and his stay in the county jail, to show a complete disregard for law and authority. The court stated that "based upon [Jones'] criminal misconduct over the years, including, of course, the subject offenses, [] he has not learned to abide by the laws of society and is likely to recidivate." In other words, the court acknowledged Jones' instant offenses only in observing that they represented the latest in a long, sustained history of criminal activity, indicative of a high likelihood of recidivism.

12

This Court finds no other evidence that the instant offenses affected the decision of the district court to depart upwards. In any event, this isolated statement fails to rise to the level of an abuse of discretion, and this Court therefore holds that impermissible factors did not prejudice the upward departure analysis.

Third, Jones asserts that the district court found Category III appropriate, then abused its discretion by departing upward to Category IV. The record establishes that the court actually found that Jones' criminal history corresponded to Category IV, but exercised leniency in initially deciding upon Category III: "I think I would be fully justified in finding that criminal history category IV is the applicable criminal history category. However, I'm going to give the defendant the benefit of the doubt and find that criminal history category III is the appropriate criminal history category . . . ." After this finding, Jones spoke on his own behalf, engaging in a lengthy diatribe in which he referred to the sentencing judge as, *inter alia*, "an evil man," a "Master Mason," and "the worst." Thereafter, the court made the final determination to impose the two-category upward departure to Category IV.

This Court finds that Jones' outburst during the hearing, though highly inflammatory and irreverent, did not taint the decision of the sentencing court to prescribe Category IV. While the court announced the departure subsequent to

Jones' testimony, in doing so, the court simply reiterated its original finding that Jones' criminal history more accurately corresponded to Category IV. If Jones' conduct in court affected this decision at all, it likely only confirmed Jones' high likelihood of recidivism by manifesting his enduring disrespect for the judicial system and insistence upon violating the law. Once again, this Court is well-satisfied that the record supports the two-category departure and finds no abuse of discretion on the part of the district court.

### III.  Conclusion

The district court properly ordered the immediate lump sum restitution payment and the two-category upward departure in Jones' criminal history category. Accordingly, the decision below is AFFIRMED.