[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2006
THOMAS K. KAHN
CLERK

Nos. 05-12805
and 05-12952
Non-Argument Calendar

_____

D. C. Docket Nos. 04-00048-CR-J-32-HTS
03-00033-CR-J-32-MMH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS GRAY WILLIAMS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(February 28, 2006)**

Before DUBINA, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Dennis Gray Williams appeals his 92-month sentence stemming from his plea of guilty to possessing and uttering a counterfeit security, in violation of 18 U.S.C. § 513. He also appeals his convictions and sentences for unlawful use of an identification of another person, in violation of 18 U.S.C. § 1028, and use of unauthorized access devices, in violation of 18 U.S.C. § 1029. Williams was convicted in two separate cases, which were consolidated for sentencing purposes.

In the first case, herein referred to as *Williams I*, Williams was charged with several offenses involving his production and use of counterfeit checks drawn on accounts purportedly belonging to, among others, the Jacksonville Sheriff's Office ("JSO"). Williams pled guilty to possessing and uttering a counterfeit security pursuant to a plea agreement, which contained a "No Further Charges" provision that provided that the government would not charge Williams with committing any other federal criminal offenses related to the conduct charged, that was known to the government at the time of the execution of the agreement.

The second case, herein referred to as *Williams II*, involved Williams's unauthorized use of another person's identification to obtain a credit card and the use of that card to obtain cash and other items of value. The investigation that led to the offenses charged in *Williams II* was conducted and completed prior to Williams's execution of the plea agreement in *Williams I*. Williams pled guilty to

the offenses charged in *Williams II* without the benefit of a plea agreement.

After applying the Sentencing Guidelines, the district court determined that Williams had an offense level of 10 and criminal history category of VI, which resulted in a guideline range of 24 to 30 months imprisonment before consideration of any departures. Finding that Williams's criminal history category substantially under-represented the seriousness of his criminal history and the likelihood for recidivism, the district court decided to upwardly depart under U.S.S.G. § 4A1.3 to an offense level of 23, which resulted in an advisory guideline range of 92 to 115 months imprisonment. The district court imposed a 92-month sentence for each of Williams's counts of conviction. We consolidated Williams's cases on appeal and consider each in turn.

### I. *Williams I*

Regarding *Williams I*, Williams first argues that the district court erred when it considered his prior arrests when deciding to upwardly depart from the otherwise applicable guideline range. He asserts that in considering his arrest record in addition to his prior convictions, the court violated his Sixth Amendment right because it imposed a sentence that was not based solely on facts reflected in the jury verdict or admitted by him. Additionally, Williams asserts that the court abused its discretion in granting the upward departure because the court was

3

prohibited from considering his arrest record under U.S.S.G. § 4A1.3.

Williams did not object to the use of his arrest record in determining his sentence before the district court. As a result, we review this claim for plain error. *United States v. Maurice*, 69 F.3d 1553, 1557 (11th Cir. 1995). Plain error occurs when there is (1) an error; (2) that is plain or obvious; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993).

Section 4A1.3 of the guidelines provides for an upward departure if a defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or likelihood for recidivism. U.S.S.G. § 4A1.3(a)(1). In determining the basis for an upward departure, a court may consider, among other things, "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(a)(2)(E). The court, however, cannot consider "a prior arrest record itself." U.S.S.G. § 4A1.3(a)(3). We have indicated that this prohibition implies that "an arrest record standing alone is not sufficiently reliable to support a departure." *United States v. Williams*, 989 F.2d 1137, 1142 (11th Cir. 1993). A court can rely on a presentence investigation report ("PSI") that lists arrests if the PSI provides the facts that

prompted the arrests. *United States v. Hernandez*, 160 F.3d 661, 670 (11th Cir. 1998).

After reviewing the record, we conclude that the district court did not commit an error, plain or otherwise, when it relied on Williams's prior arrest history in deciding to impose an upward departure. The district court did not rely on Williams's arrest record itself as the PSI provided information regarding eleven of Williams's prior arrests, nine of which involved conduct similar to that for which Williams was convicted in the cases before the district court. Additionally, the district court's decision to depart was not based solely on Williams's arrest record. The court also considered that Williams had been convicted of 50 felonies and 25 misdemeanors, and that he committed the instant offense almost immediately after he was released from federal custody in a different case, and had state charges pending. Moreover, the district court did not violate Williams's Sixth Amendment right by relying on his criminal history to impose the upward departure because Williams raised no objections to the PSI's recitation of his criminal history. Williams's failure to dispute the facts contained in the PSI operates as an admission of those facts and, since he admitted the facts underlying the upward departure, there is no Sixth Amendment violation. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (factual statements in PSI were

5

deemed admitted as true because defendant raised no objections to them); *United States v. Petho*, 409 F.3d 1277, 1280 n. 1 (11th Cir. 2005) ("Because Petho admitted to the facts underlying these enhancements, there is no Sixth Amendment error.").

Second, Williams contends that the extent of the district court's upward departure was unreasonable because the court did not give him notice as to the particular prior convictions it was considering in evaluating the upward departure and the court improperly relied on his prior arrest record when upwardly departing. Williams argues that the court's departure was also unreasonable because it used an improper method for determining the degree of the departure when it failed to move incrementally down the sentencing table.

Because Williams failed to object to the reasonableness of the upward departure imposed by the district court on the grounds he asserts in this claim, we review this claim for plain error. *Maurice*, 69 F.3d at 1557. Section 4A1.3 of the guidelines instructs that in upwardly departing from a category VI, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B). We have held that district courts do not have to "explicitly discuss their reasons for

6

bypassing incremental offense level sentencing ranges" when imposing a criminal history departure above a category VI. *United States v. Dixon*, 71 F.3d 380, 383 (11th Cir. 1995). In *Burns v. United States*, 501 U.S. 129, 135-139, 111 S. Ct. 2182, 2186-2187, 115 L. Ed. 2d 123 (1991), the Supreme Court held that a district court must give notice that it is contemplating an upward departure before it imposes a departure on a ground not identified in the PSI or in a pre-hearing submission by the government. *Id.*

We conclude from the record that the district court did not plainly err in imposing a 13-level upward departure based on Williams's criminal history. The court did not use an improper method for determining the degree of the departure in this case as it acknowledged that it had to move incrementally down the sentencing table to determine the applicable guideline range. The court considered Williams's criminal history and the factors set out in § 3553(a), and, based on these considerations, determined that an offense level of 23 yielded an appropriate guideline range of 92 to 115 months imprisonment. After again considering the factors in § 3553(a), the court imposed a 92-month sentence. The court did not have to discuss each offense level it bypassed in imposing the departure. Additionally, as discussed above, the district court did not err in relying, in part, on Williams's arrest record in departing. Furthermore, contrary to Williams's

7

assertion, the court was not required to give him notice of the upward departure because the PSI identified the departure. In any event, the court gave Williams notice that it was contemplating an upward departure at all of his sentencing hearings. To the extent Williams asserts that the court should have notified him of the specific convictions it considered in evaluating the departure, the court's decision was not based on particular convictions, but was based on Williams's overall criminal history in general, and the court informed Williams of such. As a result, the 13-level departure imposed by the court was not plainly erroneous.

Next, Williams argues that he was not put on notice as to the extent of any potential departure because no viable basis for an upward departure existed as a result of the nature of his offense and related conduct. He contends that the degree and extent of the upward departure violated the *Ex Post Facto* Clause because the sentence imposed by the district court was higher than realistically imagined at the time he committed the offenses. Because the crimes were committed pre-*Booker*, the Sentencing Guidelines were mandatory and Williams contends it was not imaginable that he would receive the sentence he received based on an advisory guideline scheme which resulted from a decision announced after he committed the offenses. Moreover, Williams argues that his sentence also violated the *Ex Post Facto* Clause because the court considered a prohibited factor in determining his

sentence.

We generally review claims that a sentence was imposed in violation of the *Ex Post Facto* Clause *de novo*. *United States v. Abraham*, 386 F.3d 1033, 1037 (11th Cir. 2004), *cert. denied*, 126 S. Ct. 417 (2005). However, because Williams did not raise this claim before the district court, we review for plain error. *Id.* "The *ex post facto* clause prohibits the enactment of statutes which . . . make more burdensome the punishment for a crime, after its commission . . ." *Id.* (internal quotations and citation omitted). Two elements are needed to find an *ex post facto* violation: (1) the law must be retrospective, meaning it applies to events occurring before its enactment; and (2) the offender must be disadvantaged by it. *Id.*

At the time Williams committed his offense, the U.S. Code provided for a maximum sentence of ten years imprisonment. *See* 18 U.S.C. § 513 (2002). Furthermore, the guidelines provided that a district court could upwardly depart from the otherwise applicable guideline range if a defendant's criminal history category significantly under-represented the defendant's criminal history or the likelihood that he would commit further crimes. *See* U.S.S.G. § 4A1.3 (Nov. 1, 2001). The guidelines also provided that in making its departure decision, the court could consider prior similar conduct that did not result in a conviction. *Id.*

The retroactive application of *Booker* in this case does not violate *ex post*

9

*facto* principles. Williams had fair warning that he faced up to ten years imprisonment for the offense he committed, that the court had the discretion under the guidelines to increase his sentence based on his criminal history, and that the court could consider his arrest record in deciding whether to depart. Accordingly, we hold that his 92-month sentence does not violate *ex post facto* principles.

Finally, Williams asserts that the government breached the plea agreement in the instant case when it pursued the charges in *Williams II*. He contends that he was induced into entering into the plea agreement by the "No Further Charges" clause because he believed it limited the government's ability to assert new charges based on the investigation that occurred before he entered into the plea agreement, and he believed that the government would have asserted any charges from that investigation in the instant case. He contends that the government also breached the plea agreement because it suggested that the court sentence him above the applicable guideline range. He asserts that the government denied him the benefit of his bargain because it was not only an unpersuasive advocate for the plea agreement, but effectually argued against it.

Although Williams filed a motion for specific performance in *Williams II* requesting that the court dismiss the indictment in that case based on the plea agreement in the instant case, Williams did not assert in either case that the

10

government breached the plea agreement. For this reason, we review his claim for plain error. *United States v. Thayer*, 204 F.3d 1352, 1356 (11th Cir. 2000).

Williams fails to show that the government's alleged breach of the plea agreement constitutes plain error because he fails to establish that it affected his substantial rights. The record reflects that the institution of *Williams II* did not affect the court's decision to depart. During Williams's first sentencing hearing, only the instant case was before the court, and the court stated at that time that it was considering an upward departure because of Williams's extensive criminal history. Further, although the government may have potentially breached the plea agreement when it suggested that the court sentence Williams within a range higher than that otherwise applicable, the record reflects that the court did not understand the government's comments to be a motion for an upward departure, and, in any event, the court found that the sentence recommended by the government was nevertheless "dramatically inadequate." The court's statements during the sentencing hearings make it apparent that from the outset the court did not consider any of the guideline ranges discussed to be appropriate. In fact, the court indicated that it had considered imposing the statutory maximum sentence, which greatly exceeded the sentencing range recommended by the government. As a result, Williams cannot show that any potential breach of the plea agreement by

11

the government affected his substantial rights.

**II.** *Williams II*

In *Williams II*, Williams argues that the district court erred in denying his motion for specific performance of the plea agreement in *Williams I*. He contends that the "No Further Charges" provision prevented the government from indicting him in *Williams II*. He argues that *Williams II* and *Williams I* were "related" because he used a counterfeit JSO check, which was the same conduct he was indicted for in *Williams I*, to make a payment on the fraudulently obtained credit card. He contends that the government was aware of the investigation that lead to the charges in *Williams II* at least six months before he entered into the plea agreement in *Williams I*, and the conduct in the instant case occurred during the same time period as that in *Williams I*. He questions what other charges the "No Further Charges" provision of the plea agreement could have referred to and asserts that the district court's line of reasoning in denying his motion was flawed. He asserts that cases involving fraud do not occur in a vacuum and that his conduct in *Williams I* helped to perpetuate the cover-up of his conduct in the instant case.

When the government fails to honor a plea agreement, the court has the discretion of determining the appropriate remedy. *United States v. Jefferies*, 908 F.2d 1520, 1527 (11th Cir. 1990). A knowing and voluntary guilty plea waives all

12

nonjurisdictional defects in the proceedings against a defendant. *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986).

After reviewing the record, we conclude that Williams waived his right to appeal the district court's denial of his motion for specific performance. Williams ultimately entered an unconditional plea of guilty. Additionally, prior to entering his guilty plea, the district court informed Williams, among other things, that his plea was unconditional and that he would be giving up the right to appeal the denial of his motion. Williams does not contend that his guilty plea was unknowing or involuntary. Accordingly, because Williams's claim is nonjurisdictional, he waived his right to appeal the denial of his motion for specific performance when he entered his unconditional guilty plea.

Next, Williams argues that the 92-month sentence imposed by the district court was unreasonable, despite his criminal history, because it resulted from an unrequested upward departure. He contends that his sentence is three-times longer than the high-end of the applicable guideline range, which was 24 to 30 months imprisonment.

"A district court's decision to depart from the guidelines is reviewed for abuse of discretion." *United States v. Jones*, 289 F.3d 1260, 1266 (11th Cir. 2002); *see also United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005) (holding

that pre-*Booker* standards for reviewing application of the Sentencing Guidelines still apply post-*Booker* because the "reasonableness" standard applies to the ultimate sentence imposed, not application of individual guidelines). "The district court's interpretation of the sentencing guidelines is subject to *de novo* review on appeal, while its factual findings must be accepted unless clearly erroneous." *United States v. Ellis*, 419 F.3d 1189, 1192 (11th Cir. 2005) (internal quotations and citation omitted). After the court correctly calculates the guidelines, the court may impose a more severe or more lenient sentence, which we review for reasonableness in light of the factors set out in 18 U.S.C. § 3553(a). *United States v. Jordi*, 418 F.3d 1212, 1215 (11th Cir.), *cert. denied*, 126 S. Ct. 812 (2005).

Section 4A1.3 of the guidelines provides for an upward departure if a defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or likelihood for recidivism. U.S.S.G. § 4A1.3(a)(1). In determining the basis for an upward departure, a court may consider, among other things, "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(a)(2)(E). The statutory maximum for violating § 1028 was 15 years imprisonment. 18 U.S.C. § 1028. The statutory maximum for violating § 1029 was 10 years imprisonment. 18 U.S.C. § 1029.

14

The district court's *sua sponte* application of an upward departure does not render Williams's sentence unreasonable. As an initial matter, the district court did not abuse its discretion by *sua sponte* imposing an upward departure. The guidelines expressly authorize a court to depart upward from a defendant's guideline range if the court determines that the defendant's criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism. Unlike a provision such as U.S.S.G. § 5K1.1, there is no requirement that the government make a motion for an upward departure under § 4A1.3.

Williams's claim only concerned the process by which the court came up with his sentence, and does not assert how the sentence itself is unreasonable. Nevertheless, the sentence imposed by the court is reasonable. The court correctly applied the guidelines after finding that Williams's criminal history category under-represented the seriousness of his criminal history. The record reflects that the court considered the factors set out in § 3553(a), specifically emphasizing the need for Williams's sentence to afford adequate deterrence and protect the public from further crimes. In light of Williams's extensive criminal history, which included convictions in 32 cases, 27 of which involved conduct similar to the offenses involved in the cases before the court, and his repeated commission of the

15

same or similar crimes, the 92-month sentence imposed by the court achieves the sentencing purposes set forth in § 3553(a), including the specific factors emphasized by the district court.

For the above stated reasons, we affirm Williams's convictions and sentences.

**AFFIRMED.**