[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16325
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 1, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00390-CR-01-RWS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHUNITA SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 1, 2009)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Shunita Scott challenges the order of restitution entered after her convictions for mail fraud, 18 U.S.C. § 1341, making false statements, 18 U.S.C. § 1014, and money laundering, 18 U.S.C. § 1957. Scott argues that the district court failed to consider her ability to pay when it imposed restitution and failed to apportion that restitution fairly between her and a codefendant. We affirm.

## I. BACKGROUND

Scott, a licensed real estate agent, and her boyfriend, Christopher Hill, devised a scheme to defraud banks and elderly homeowners of money by inflating purchase prices to increase brokerage commissions. On one occasion, Scott listed a home owned by sixty-year-old Cynthia Mingo at $95,000 and later reduced the price to $87,000. The day after Scott increased the price of the property to $107,000, she paid to Mingo $100 earnest money on behalf of Hill. Mingo was due $24,600 at closing and was issued two checks for $2,600 and $22,000. Although none of the closing documents stated that Scott was owed $22,000, Mingo endorsed the $22,000 check to Scott. Scott later paid Hill $22,000.

In a second transaction, Scott represented Paul Gray, who was 78 years old. Scott listed Gray's house at $105,000, raised the price to $120,000, and lowered it again to $105,000. The day after Scott again increased the price to $120,000, Hill signed a purchase agreement. Gray was due $109,000 at closing, received two

2

checks for $84,000 and $25,000, and endorsed the latter check and gave it to Scott and Hill. Hill later deposited the check in his bank account.

Scott's third transaction caught the attention of federal agents who had been investigating Hill for trafficking in drugs. Scott listed a home owned by 71-year-old Roosevelt Callaway at $200,000. Callaway had confided in Scott that he needed to sell the property for $185,000. Hill later agreed to purchase the property for $185,000 and obtained a loan of $166,500 from American Residential Mortgage. Scott and Hill decided to charge Callaway $32,225 at closing for supposed repairs to the property by CBE Design, a company incorporated by Hill less than one month before the closing. Neither the relationship between CBE Design and Hill or the need for the repairs was disclosed to Callaway before closing. American Residential later foreclosed on the property and sold the property for $150,512.58.

Scott was indicted for mail fraud, 18 U.S.C. § 1341, making false statements, 18 U.S.C. § 1014, and money laundering, 18 U.S.C. § 1957. Scott pleaded guilty to all three counts of the indictment. The presentence investigation report provided a base offense level of seven, United States Sentencing Guideline § 2B1.1, and increased it by eight levels for a loss between $70,000 and $120,000, id. § 2B1.1(b)(1)(E), by one level because the offense involved money laundering,

3

id. § 2S1.1(b)(2)(A), by two levels for vulnerability of the victims, id. § 3A1.1, by two levels for use of a special skill to commit or conceal the crime, id. § 2B1.3, and by two levels for obstruction of justice, id. § 3C1.1. With a criminal history of I, the report provided a sentencing range between 41 and 51 months of imprisonment. Scott objected to a number of the enhancements.

At the sentencing hearing, the government introduced evidence about how Scott perpetrated the fraud. Lauren George, a forensic auditor, testified that Scott acted as realtor for the seller and buyer, which allowed her to control the list price and what documents were included in the closing package to facilitate the fraudulent commissions. George testified that she examined the documents used in the Callaway closing and found suspicious the absence of an acknowledgment that the repairs had been completed. George also suspected that the addendum charging Callaway for repairs was fraudulent because CBE Design was owned by Hill and the business was not located at the address listed on the addendum. When George questioned Callaway about the transaction, he stated that he was unaware of the need for repairs and signed the addendum to complete the sale of the property.

Callaway testified that he had a ninth grade education and had lived in his home for 32 years. He testified that he first saw the addendum when the

government questioned him about the transaction; he had not initialed the document; and the repairs purportedly made by CBE Design were unnecessary. On cross-examination, Callaway acknowledged that he was made aware of the cost of the repairs during closing; did not request a list of the repairs; signed a document that agreed to payment for the repairs; and did not file a complaint against Scott.

Scott argued that the Callaway transaction should not be included as relevant conduct because Callaway agreed to pay for the repairs. The district court found that Callaway was railroaded, lacked sophistication about real estate transactions, and "was put in a position to not be able to make a reasoned, thoughtful, deliberate decision about this . . . as a result of fraud by [Scott] and Mr. Hill." The court included in the loss amount the $32,225 paid by Callaway.

Scott made other objections to her sentence. Scott requested a reduction for acceptance of responsibility, and the district court granted the request, which lowered the sentencing range to a term between 30 and 37 months of imprisonment. Scott argued for a sentence below the Guidelines on the ground that the loss amount overstated her culpability because Hill benefitted most from the fraud. Scott also argued that she derived no benefit from the Callaway transaction;

5

the fraud provided only a slight increase in her commissions; and she had lost her license to sell real estate and opened a catering business to provide for her children.

Scott argued that the $32,225 lost by Callaway "should be apportioned to Hill substantially" because he received a majority of the money. The district court disagreed. The court found that, based on the expectation in a romantic relationship that assets will be shared, Scott's argument was "a bit naive."

The district court sentenced Scott to two concurrent terms of thirty months of imprisonment. The court ruled that Scott was jointly and severally liable with Hill for restitution of $72,602, and Scott was to begin payments after her release from prison. The court imposed a special assessment of $300, but waived fines and costs of incarceration based on its finding that Scott could not pay those amounts in addition to the restitution.

## II. STANDARDS OF REVIEW

Scott's challenges to the order of restitution involve three standards of review. Objections not raised in the district court are reviewed for plain error. United States v. Jones, 289 F.3d 1260, 1265 (11th Cir. 2002). We review de novo the application of the Mandatory Victims Restitution Act of 1996. See United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). We also review de novo

6

the legality of an order of restitution and related findings of fact for clear error. See United States v. Hasson, 333 F.3d 1264, 1275 (11th Cir. 2003).

## III. DISCUSSION

Scott makes two challenges to the order of restitution. First, Scott argues for the first time on appeal that the district court failed to consider her inability to pay restitution. Second, Scott argues that the court failed to apportion restitution according to her relative culpability. These arguments fail.

An order of restitution under the Mandatory Victims Restitution Act, as suggested by its title, is not discretionary. The Act provides that a district court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the Defendant." 18 U.S.C. § 3664(f)(1)(A). Scott was required to make restitution because she defrauded at least three identifiable victims of property and caused them pecuniary loss. 18 U.S.C. §§ 3663A(a), (c)(1)(A)(ii), (c)(1)(B). The district court committed no error, much less plain error, by ordering Scott to pay restitution.

A district court has discretion to apportion restitution jointly and severally among codefendants. When the court "finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for

7

payment of the full amount of restitution . . . ." 18 U.S.C. § 3664(h). The district

court was entitled to hold Scott liable for the full amount of the restitution because

she played a critical role in causing the victim's loss. The district court did not

clearly err in its finding that Scott intended to benefit equally with Hill from the

money skimmed from the real estate transactions.

## IV. CONCLUSION

The judgment against Scott is **AFFIRMED**.