[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10082
_____

D.C. Docket No. 1:15-cr-20118-DPG-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAUL SUAREZ DEL CAMPO,

Defendant - Appellant.

_____

No. 16-10352
_____

D.C. Docket No. 1:15-cr-20118-DPG-3

UNITED STATES OF AMERICA,

Plaintiff - Appellant
Cross Appellee,

versus

MARSHALL KING,

Defendant - Appellee
Cross Appellant.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

(June 2, 2017)

Before WILLIAM PRYOR, MARTIN, and BOGGS,[*] Circuit Judges.

BOGGS, Circuit Judge:

Raul Suarez Del Campo and Marshall King were convicted, following a jury trial, of three counts of bank fraud, in violation of 18 U.S.C. § 1344. Del Campo and a partner (Richard Sanchez, who is not a party to this proceeding) formed a business entity that constructed eight single-family homes but sold only five. Del Campo and Sanchez decided to purchase the three unsold homes from their business entity. To finance those purchases, they sought and obtained loans from JPMorgan Chase and Countrywide Bank. Del Campo's crime was overstating his income and assets in applying for those loans. King, an attorney, was the closing agent for the three sales. His crime was signing the HUD-1 statements corresponding to each sale, each of which falsely stated that the buyer had tendered a substantial cash-to-close payment at the time of closing. Del Campo and Sanchez

———————————————

[*] Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

eventually defaulted on their loan obligations, causing the lenders to lose approximately $1.38 million.

On appeal, King argues that the evidence presented at trial was insufficient to support his convictions. King and Del Campo both argue that the district court erred in declining to give a good-faith-defense jury instruction. The government appeals King's noncustodial sentence as substantively unreasonable. And King further argues that the court erred in determining that the lenders were "victims" deserving of restitution and in ruling that King was liable for the full $1.38 million in restitution rather than a smaller portion of that amount.

We address each point in turn and affirm.

I

We review de novo King's challenge to the sufficiency of the evidence supporting his conviction, viewing the evidence and drawing all reasonable inferences in the light most favorable to the government. *United States v. Baldwin*, 774 F.3d 711, 721 (11th Cir. 2014).

Evidence is sufficient so long as any reasonable trier of fact could find that it established the defendant's guilt beyond a reasonable doubt. *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009). It does not matter whether the jury could reasonably have acquitted, nor whether the defendant has "put forth a

reasonable hypothesis of innocence." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006).

Nor does it matter whether the evidence presented against the defendant is direct or circumstantial, *United States v. Mieres-Borges*, 919 F.2d 652, 656–57 (11th Cir. 1990), although "reasonable inferences, not mere speculation, must support" a conviction secured using circumstantial evidence. *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

Under 18 U.S.C. § 1344, one commits bank fraud by knowingly executing "a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, . . . or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." To sustain a conviction under § 1344(1), the government must prove that "the defendant intentionally participated" in the scheme or artifice, and that the intended victim "was a federally-insured financial institution." *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002). To sustain a conviction under § 1344(2), the government must prove "(1) that a scheme existed to obtain moneys, funds, or credit in the custody of a federally-insured bank by fraud; (2) that the defendant participated in the scheme by means of material false pretenses, representations or promises; and (3) that the defendant

4

acted knowingly." *Ibid.* Intent to defraud is, therefore, an element of bank fraud under § 1344(1), but not under § 1344(2). *See Loughrin v. United States*, 134 S. Ct. 2384, 2393 (2014). Finally, the Supreme Court has held that a conviction for federal bank fraud requires that the scheme to defraud employ not simply falsehoods, but *material* falsehoods, even though materiality is not expressly mentioned in the bank-fraud statute. *See Neder v. United States*, 527 U.S. 1, 20–25 (1999).

Here, the government presented sufficient evidence to sustain King's conviction for bank fraud under either § 1344(1) or § 1344(2). While the indictment refers to both § 1344(1) and § 1344(2), each of the three counts of bank fraud refer to both sections, and neither the verdict nor the judgment order indicate that King was charged specifically with violating *one* but not the other of the two sections. Rather, King was charged with violating 18 U.S.C. § 1344 generally, and a rational juror could have found King guilty of bank fraud under *either* of the two sections.

First, there was sufficient evidence for a rational juror to conclude, beyond a reasonable doubt, that King participated in a scheme involving false representations, because trial testimony established that King was the closing agent for the three loans at issue and that King falsely certified that Del Campo and

5

Sanchez personally produced and paid cash-to-close payments when they had not done so. A rational juror could have concluded, beyond a reasonable doubt, that these false certifications were material because all three underwriters who testified at trial made clear that actual receipt of cash-to-close payments was a strict prerequisite for the disbursement of any loan proceeds, and that it was the closing agent's responsibility to ensure that the cash-to-close payments were received. And a rational juror could have concluded that King knowingly *and* intentionally facilitated the federally insured lenders' disbursement of funds based on false representations, beyond a reasonable doubt, because Sanchez's trial testimony established that prior to one of the closing transactions, King instructed Sanchez to bring a check for the cash-to-close amount, but simultaneously assured Sanchez that the check would not really be cashed and that the cash-to-close amount would instead be deducted from the loan proceeds. Reasonable inferences, and not mere speculation, could lead a rational juror to find King guilty of bank fraud based on the government's evidence.

Accordingly, we affirm King's convictions in this respect.

II

King and Del Campo both argue that the district court erred in refusing to provide the pattern "good faith" jury instruction. We review for abuse of

6

discretion. *United States v. Sirang*, 70 F.3d 588, 593 (11th Cir. 1995). Refusal to give a requested instruction is an abuse of discretion only if "the requested instruction is substantially correct as proffered, is not addressed in the charge given, and the instruction deals with a trial issue that is so important that the failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *United States v. Walker*, 26 F.3d 108, 109 (11th Cir. 1994) (per curiam).

The defendants in *Walker* were convicted of fraud. At trial, the court instructed the jury what "intent" meant in the context of the defendants' charges. *Id.* at 109–10. The defendants appealed, asserting that the trial court wrongly refused to give the pattern good-faith-defense instruction. But we affirmed, holding that because "[a] finding of specific intent to deceive categorically excludes a finding of good faith," the court had already addressed the substance of the requested instruction in its jury charge, and the jury had thus been adequately directed to consider the substance of a good-faith defense. *Id.* at 110.

Our pattern good-faith-defense instruction provides:

"Good faith" is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith. The Government must prove intent to defraud beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken. Similarly,

7

> evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.

> But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

Eleventh Circuit Pattern Jury Instructions, Special Instruction 17 (2010).

Here, the district court did not abuse its discretion in declining to include a good-faith-defense instruction. King and Del Campo argue that they were entitled to the instruction because they had presented evidence of "mistaken judgment," such as a defense expert's testimony that King had "merely entered information in the wrong column." Del Campo Br. 4. Del Campo argues that he had a "good faith purpose in refinancing the three unsold homes" because he wanted "to pay off the labor workers" and "repay the lenders who had financed [the] construction project." *Id.* 8. But even if King and Del Campo met their relatively light burden of presenting "some evidence" that would *allow* the issuance of a good-faith instruction, the district court was not *required* to issue such an instruction.

Indeed, the given instructions were more than enough to cover the substance of the requested good-faith-defense instruction, and the absence of that instruction did not impair either King's or Del Campo's ability to present a defense. The court's substantive bank-fraud instruction, for example, elaborated the elements of

8

bank fraud as set forth earlier in this opinion, including a definition of "scheme to defraud" as "any plan or course of action intended to deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises relating to a material fact"—a definition certainly sufficient to cover the substance of the good-faith instruction. The court issued a separate instruction on the meaning of "knowingly": an act "done voluntarily and intentionally and not because of a mistake or by accident"—a definition certainly sufficient to cover King's defense that he had made only a mistake in judgment, for example.

Moreover, the court included a thorough description of King and Del Campo's theory of defense in its charge, which likewise covered the substance of the good-faith-defense instruction. The court clarified that King and Del Campo contended that "they did not intend to defraud the banks," that they "committed no fraud," that they were not guilty, and that any misrepresentations they might have made "were not material to the banks' decision."

Thus, the district court did not abuse its discretion in refusing to include the proposed good-faith instruction, and we affirm the district court in that respect.

### III

We review the reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). We "first

ensure that the district court committed no significant procedural error," such as improperly calculating the guideline range or inadequately explaining the chosen sentence. *Id.* at 51. We then examine whether the sentence was substantively reasonable, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range," but giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify" a given variance. *Ibid.* The party challenging the sentence has the burden to prove that the sentence is unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, "afford adequate deterrence to criminal conduct" (i.e., afford *general* deterrence), and "protect the public from further crimes of the defendant" (i.e., provide *specific* deterrence). 18 U.S.C. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted

sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

The weight given to any one § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). But a court abuses its discretion if it fails altogether to consider relevant factors that were due significant weight, accords significant weight to an improper or irrelevant factor, or commits a clear error of judgment by unreasonably balancing the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). We have held that reasonableness review is unquestionably deferential, but that it is "not the same thing as turning a blind eye to" unreasonably low (or high) sentences. *Id.* at 1191. The district court should articulate a "sufficiently compelling" justification, for example, to support a 100% downward variance. *Id.* at 1196; *see also United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013) (holding probation-only sentence "fail[ed] to achieve an important goal of sentencing in a white-collar crime prosecution: the need for general deterrence" where the defendant had stolen almost $3,000,000 as part of a healthcare-fraud scheme and the low end of the guideline range was fifty-seven months of imprisonment).

11

Here, against an advisory guideline range of forty-six to fifty-seven months of imprisonment, the district court sentenced King to five years of supervised release, the first six months of which King served under home detention. King's sentence was therefore entirely noncustodial, apart from one day of confinement (the day of King's arrest and booking).

The government argues that the district court "gave itself room, analytically, to undermine the importance of general deterrence in white collar cases" when it underestimated the seriousness of King's crimes in order to justify a downward variance from 46-57 months to no imprisonment. Government's Responsive Br. 44. And the government maintained at oral argument that a greater sentence is necessary in order to send a "message."

But it is unclear precisely how King's sentence in this case would in any way undercut the general deterrent effect of the federal bank-fraud laws. As the district court recognized, after all, King was a seventy-one-year-old attorney with no criminal history whatsoever, whose offenses predated his sentencing by nine years (during which time King's record was unblemished), and who suffered from a litany of medical ailments including diabetes, hypertension, and chronic vertigo. And while King did not express "the contrition that [the district court] expected to hear," the district court weighed that against King's other characteristics and

12

relevant facts, such as the fact that King did not personally profit from the three loan transactions except to the extent of the normal fee that King would have received for any legitimate closing. The district court thus reasoned that even though the banks eventually suffered more than a million dollars in losses when Del Campo and Sanchez defaulted on their loan obligations, and even though King played a necessary role in the scheme, King personally was not as blameworthy as one who stood to receive the full benefit of a multi-million-dollar fraud (as in *Kuhlman*).

We defer to the district court's judgment that a greater sentence was not necessary to effect specific deterrence in this case, for the district court weighed King's particular characteristics in making that determination and did not abuse its discretion in doing so. We further hold that the district court did not abuse its discretion in determining that general deterrence did not command a term of imprisonment. As far as this court can tell, there do not appear to be many 71-year-old title attorneys in poor health awaiting our decision to determine whether helping their friends to commit bank fraud will be "worth it." Indeed, *even if there were*, it does not stand to reason that our decision today would actually have an effect in deterring their criminal action: even if criminals are rational actors and general deterrence worked to decrease the likelihood of criminal action by

13

increasing the probability and severity of punishment, surely what effects general deterrence (except, perhaps, in certain high-profile cases, *see, e.g.*, *Irey*, 612 F.3d 1160) is the probability and *expected* severity of punishment attending a given offense, rather than the extent of an upward or downward variance in an outlier case. And there is no indication that King's sentence here will in any way affect the *expected* sentence to be handed down for committing bank fraud. Rather, the sentencing guidelines and statutory sentencing provisions—and the frequency with which district courts hand down sentences well within the advisory ranges—send a clear message that the presumptive penalty for bank fraud is imprisonment. Whether King personally receives a sentence of probation surely cannot meaningfully affect whether would-be criminals—again, assuming they act rationally in determining whether to commit crime in the first place—decide that their own potential criminal activity is worth the risk of being caught and punished.

King's sentence was not substantively unreasonable. The record is clear that the district court considered the § 3553(a) factors and did not abuse its discretion in weighing and balancing them. Accordingly, we affirm King's sentence.

IV

Generally, we review de novo the legality of a district court's order of restitution, reviewing underlying factual findings for clear error and reviewing the

14

district court's determination of the value of lost or destroyed property for abuse of discretion. *United States v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008) (per curiam). When a defendant fails to object to an aspect of a restitution order in the district court, however, we review for plain error only. *United States v. Jones*, 289 F.3d 1260, 1265 (11th Cir. 2002).

The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, required the district court to award restitution to identifiable victims of bank fraud without regard to the defendant's ability to pay. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii); *id.* § 3664(f)(1)(A); *see also United States v. Singletary*, 649 F.3d 1212, 1220 (11th Cir. 2011). Under the MVRA, a victim is any

> person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).

Thus, a victim must have suffered harm. And the defendant must have proximately caused that harm. To prove proximate cause, the government must establish that the defendant is a "but for" cause of the harm, and that the connection is "not too attenuated (either factually or temporally)." *United States v. Martin*, 803 F.3d 581, 594 (11th Cir. 2015).

15

The MVRA sets forth specifically that when more than one defendant contributes to a victim's loss, "the court may make each defendant liable for payment of the full amount of restitution *or* may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h) (emphasis added). The sentencing guidelines advise a sentencing court that a restitution order should reflect the full amount of a victim's loss, but state that the MVRA controls where applicable. USSG §5E1.1(a)–(b).

Here, as an initial matter, plain-error review applies because King did not argue below that the banks were not victims under the MVRA, nor did King argue below that the restitution amount should be apportioned based on fault. In any event, the district court did not err in determining that the banks *were* victims. But for King's actions as closing agent, the banks would not have disbursed the loans, because King's verifications that the cash-to-close payments had been received were necessary prerequisites to their disbursement, thus making King a proximate cause of the banks' losses. And while King may not have stood to benefit from the fraud to the same extent as Del Campo and Sanchez, the court did not err in holding King jointly and

16

severally liable for the full restitution amount, because the governing statute expressly authorized the district court to do so.

Finally, King argues that the banks had "unclean hands" and could not possibly be victims entitled to restitution because they themselves were engaged in predatory lending practices. But, while unclean hands may be a defense to receiving the equitable remedy of restitution in a *civil* case, no principle of *criminal* law allows a criminal defendant to assert unclean hands as a defense to satisfying a court's award of *criminal* restitution. We therefore affirm the district court's restitution order.

V

**AFFIRMED.**

17