SUTTON, Circuit Judge,
dissenting.
Sun Life and Tonguette share some common ground in this case. They agree that Sun Life has interpretive authority over this group life insurance plan, meaning that the courts will accept its interpretation so long as it is not arbitrary and capricious. They agree that there is some facial ambiguity over whether the “death benefit” provided by the life insurance plan applies only to a death that occurs within 31 days after separation from the company or extends to a death that occurs up to 91 days after separation if the employer or Sun Life fails to give written notice of the option to convert the group policy to an individual policy. And they seem to agree that the search for meaning does not end merely because a first reading of the relevant provisions suggests facial ambiguity.
In attempting to resolve this ambiguity, Tonguette focuses on the fault of Sun Life and the employer in failing to give notice of the conversion option during the initial 31-day period and the plan’s provision for a 60-day extension of the conversion period when no notice is given. So long as the employer and Sun Life give notice of the conversion option within 15 days of an employee’s separation from the company in the future, Tonguette points out, the death benefit will apply only to deaths that occur within 31 days of a departure from the company. The insurance company in short holds the key to any undue consequences caused by this interpretation and next time around can simply turn the key — give notice — and avoid this problem.
Tonguette’s reading, it seems to me, overstates the value of imposing the risk of a lack of notice on the insurance company/employer and understates the nature of the death benefit. To my mind, it is helpful to think about the relevant provisions as creating two things: (1) a death benefit that is given no matter what happens and is free because it does not require a conversion of the policy or the payment of any *549 premiums (and indeed requires the return of any premiums paid) and (2) a life insurance conversion option (not unlike a COBRA medical insurance conversion option) that contains a conversion period of at least 31 days and as many as 91 days if no written notice of the conversion option is given.
Once we separate these two concepts, an uncomfortable reality of Tonguette’s interpretation emerges. It reads “the 31 day” out of existence. Recall the language of the key sentence: “Claim may be made for a death benefit if you die during the 31 day period during which your insurance may be converted to an individual policy.” Under Tonguette’s reading, the key phrase (“the 31 day”) does no work, an interpretive consequence we try to avoid where possible. Loughrin v. United States, — U.S. -, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014). Part 6 of Del’s policy, which contains all of the provisions at issue here, mentions a 31-day time period six times. The other five references concern the 31 days immediately following the date the policy terminates: the date of separation from the company. It would not seem to be arbitrary to use that meaning here.
Nor is it obvious how best to account for the incentives of the parties in this setting. Best I can tell, the employer has no skin in the game from a monetary perspective. Leaving the death benefit window at 31 days or extending it to up 91 days would not affect the employer one way or the other, as the insurance company pays the claim. Nor does it seem that Sun Life would have any incentive to delay notifying a former employee of his conversion rights. The company always has an incentive to provide notice: money. When an insured converts a lapsed group policy into an individual policy, Sun Life collects a stream of new premium payments. Think of notice of a conversion right as the most promising form of advertising an insurance company ever provides. Any other approach to the issue assumes that Sun Life has a most unorthodox business plan for an insurance company.
No doubt, Tonguette’s widow suffered if the couple did not know about the conversion option and if they would have converted the policy to an individual policy had they been told of the option before he unexpectedly died. But even this perspective requires qualification. The Ton-guettes were not fault free. The employee handbook warns employees that all individual coverage “terminates ... when you leave your employment.” R. 31-1 at 24. And it warns employees that “[i]f you , cease active work, see your supervisor to determine what arrangements, if any, may be made to continue your coverage beyond the date you cease active work.” Id. The record confirms only that Del Tonguette did not receive “written notice” of the conversion option — the triggering event for extending the conversion option window— not that he did not have actual notice of the option.
Even if we assume Del Tonguette had no notice, whether actual or written, of the conversion option, consider what Ton-guette’s reading of the plan means in other settings. Consider for example how this would play out for an employee who had actual notice of the option, hardly an unusual scenario for a responsible employee who voluntarily leaves a company, but no “written notice” of the option. He or she could do one of two things: (1) convert immediately and still receive a three-month free death benefit or (2) wait to convert until day 91 but be covered before then anyway. As interpretive consequences go, neither one of these possibilities seems like a probable way of capturing the point of this “death benefit.” Adding to my doubts on this score is the reality *550 that the provision says the death benefit will apply “whether or not you have ... paid the first premium.” As shown, more than one premium could be paid in a 91-day window in this scenario. As I see it and as I think Sun Life could see it without being arbitrary and capricious, the policy provides a 81-day free death benefit (no questions asked, no premiums needed, no conversion needed) and a 91-day window to convert (if the employer or Sun Life fails to give written notice of the conversion option). The majority seeing things differently, I respectfully dissent.