# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41416
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 21, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARCO F. MADAIO, also known as William A. McCoy,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CR-238-1

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

In 2006, Marco F. Madaio was indicted for bank fraud in violation of 18
U.S.C. § 1344. The indictment alleged that on June 18, 2002, Madaio opened
a bank account at Northstar Bank of Texas (Northstar Bank); on July 1, 2002,
Madaio deposited in his Northstar Bank account check # 326 in the amount of
$450,000, which was originally made payable to the Internal Revenue Service
(IRS) but had been altered to be made payable to "Marco Madio [sic] or Rolf

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-41416

Deush;" and Madaio thereafter withdrew funds from the Northstar Bank account that had been fraudulently inflated due to his deposit of the altered check. After a 2015 jury trial, Madaio was convicted and sentenced to 33 months of imprisonment, five years of supervised release, and restitution in the amount of $299,757.04.

Madaio now appeals his conviction on the ground that the evidence was insufficient to support the jury's guilty verdict.[1] Because Madaio preserved this challenge for appeal by seeking a judgment of acquittal following the Government's case in chief, which constituted the close of all evidence, this court reviews his challenge de novo. *See United States v. Alaniz*, 726 F.3d 586, 600 (5th Cir. 2013).

Section 1344 sets forth two methods by which a person can commit bank fraud. § 1344; *see United States v. Medeles*, 916 F.2d 195, 198 (5th Cir. 1990). Both methods contain the primary element of "knowingly execut[ing], or attempt[ing] to execute, a scheme or artifice." § 1344; *see Medeles*, 916 F.2d at 198. The first method requires only that the scheme is "to defraud a financial institution." § 1344(1); *see Medeles*, 916 F.2d at 198. The second method requires that the scheme is "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises. § 1344(2); *see Medeles*, 916 F.2d at 198. An indictment may allege both methods of violating § 1344, and a conviction "will stand if proof of one or more of the means of commission is sufficient." *United States v. Harvard*, 103 F.3d 412, 420 (5th Cir. 1997) (internal quotation marks and citation omitted). Because the indictment in this case alleged both

---

[1] Although Madaio has been released from BOP custody, his appeal is not moot because he is challenging his conviction. *See United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006).

methods of violating § 1344 and the trial court instructed the jury as to the elements of both methods, Madaio's conviction may be sustained under either § 1344(1) or § 1344(2). *See Medeles*, 916 F.2d at 198.

Madaio's sole contention on appeal is that the evidence was insufficient to prove that he knew check # 326 had been altered or was fraudulent. A conviction under § 1344(2) expressly requires the knowing execution of a scheme "by means of false or fraudulent pretenses, representations, or promises," which includes the presentation of a forged or altered check. *See Loughrin v. United States*, 134 S. Ct. 2384, 2393 (2014). Likewise, a conviction under § 1344(1) requires the knowing execution of a "scheme to defraud," such as through "false or fraudulent pretenses or representations intended to deceive others." *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992). Therefore, a necessary element of Madaio's conviction for bank fraud under either subsection of § 1344 is that he knew he was depositing an altered or fraudulent check.

Interpreted in the light most favorable to the Government, there was significant circumstantial evidence supporting Madaio's awareness that check # 326 had been altered or was fraudulent. *See Alaniz*, 726 F.3d at 600 (holding that, in evaluating the sufficiency of the evidence, this court views all of the evidence, whether circumstantial or direct, in the light most favorable to the Government, with all reasonable inferences and credibility choices made in support of the verdict). The evidence shows that Madaio provided conflicting explanations regarding the source and purpose of check # 326; after initially stating that the check was for oilfield equipment, Madaio later explained that it was from a foreign individual named "Chief Chetty" for the purposes of a currency exchange and investment. *See United States v. Odiodio*, 244 F.3d 398, 403 (5th Cir. 2001) (citing inconsistent and implausible statements to

explain the source of disputed funds as circumstantial evidence of participation in a scheme to defraud by wire).  Additionally, Madaio deposited the $450,000 check into a new and nearly empty account, which he largely depleted in a matter of weeks, primarily through cash withdrawals, domestic and international wire transfers, and checks for personal expenses or made payable to cash, to himself or to his personal associates; one withdrawal was made by "W.A. McCoy," Madaio's alias.  *See id.* (citing prompt wiring out of the country upon receiving disputed funds as circumstantial evidence of participation in a scheme to defraud by wire).  Finally, once check # 326 was discovered to be fraudulent, Madaio repeatedly failed to keep appointments with bank employees and, after being interviewed by an IRS investigator, departed the United States for an undisclosed location and remained abroad until he was extradited approximately 10 years later.  *See United States v. Martinez*, 190 F.3d 673, 678 (5th Cir. 1999) (describing flight as probative of guilt).

There is no merit to Madaio's contention that the evidence was insufficient to establish his guilty knowledge because the face of the check did not appear fraudulent, he was not under investigation or barred from leaving at the time he departed the United States, and he opened the Northstar Bank account before check # 326 could had been received by any defrauding party. Interpreting the evidence in the light most favorable to the Government, the jury could have reasonably inferred that the face of check # 326 conflicted with Madaio's ultimate explanation of its source and purpose, Madaio fled in order to avoid possible future prosecution, and Madaio opened the Northstar Bank account as part of a fraudulent scheme to deposit any suitable large check that might be obtained and altered by a defrauding party in the near future.  *See Alaniz*, 726 F.3d at 600.

In light of the foregoing, a reasonable trier of fact could have found beyond a reasonable doubt that Madaio was aware that check # 326 had been altered or was fraudulent. *See id.* at 601 (holding that the evidence was sufficient if a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt). As Madaio has challenged the sufficiency of his conviction for bank fraud solely on the basis that he lacked guilty knowledge regarding the altered or fraudulent check, the conviction is AFFIRMED.