NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3192
_____

UNITED STATES OF AMERICA

v.

JOEL MORALES,
a/k/a ZONE,


JOEL MORALES,
                                   Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cr-468-012)
District Judge:  Hon. Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 6, 2016

Before:  JORDAN, VANASKIE, and NYGAARD, *Circuit Judges*.

(Filed: October 17, 2016)
_____

OPINION*
_____

_____

      * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Joel Morales appeals his conviction and sentence from the United States District Court for the Eastern District of Pennsylvania, arguing that the District Court erred in admitting prejudicial testimony, refusing to grant his requested jury instruction, and imposing an unreasonable sentence. We will affirm in all respects.

## I. BACKGROUND

On December 15, 2011, Morales was charged with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. The charge followed a lengthy investigation into a drug trafficking organization in North Philadelphia. According to the testimony at trial, Morales received and distributed 50 to 100 "bundles" of heroin five or six days per week from mid-2009 to 2011.[1] He controlled heroin distribution on two particular corners in his North Philadelphia neighborhood, and he had various individuals selling on those corners. Among those doing the selling was Peter Ramos, the father of Morales's girlfriend.

Ramos testified as a witness for the government. He described the operation of the heroin distribution conspiracy, its participants, and Morales's role in it. During his direct examination, Ramos testified that, while he was working for Morales, his (Ramos's) daughter and grandchildren, along with Morales, lived with him for a time

---

[1] As described at trial, a "bundle" of heroin in this conspiracy was the equivalent of one-half of a gram.

because Morales's home had "got shot up."[2] (App. 208.) Morales's counsel immediately objected to that testimony, saying he did not "know [its] relevance" and that it was also "extremely prejudicial." (App. 208.) As to prejudice, counsel claimed that the testimony would "portray [Morales] as some big drug dealer who somebody wanted to kill for some reason." (App. 210.) The government argued that the testimony established Ramos's credibility as a witness against Morales, because "[Ramos] took them into his own house and [Morales] lived with him, and his daughter and the grandchildren lived with him for a significant period of time after this event." (App. 209.) The District Court overruled Morales's objections, noting that there was already "evidence on this record of people who suddenly got shot and killed and were replaced," and that the testimony did not implicate Morales in the shooting. (App. 210-211.) Although the Court denied Morales's request for a contemporaneous limiting instruction, it did provide such an instruction during its final charge, telling the jury that it must not "use th[e] evidence of a shooting as any indication at all of Mr. Morales'[s] guilt." (App. 234.)

At the close of the final jury charge, defense counsel requested an instruction on circumstantial evidence that specifically stated such evidence can "be used to prove a defense." (App. 259.) The Court had already explained to the jury the difference between direct and circumstantial evidence, but without drawing a distinction between evidence offered by the government and any offered by Morales. The Court denied

---

[2] In his brief, Morales describes Ramos as having testified that the house was "riddled with bullets" (Opening Br. at 9), but that language does not appear in the record.

Morales's request for a more specific instruction in his favor, noting that he had not raised any affirmative defense that he sought to prove with evidence of his own.

Morales was found guilty of the drug conspiracy charge. During his subsequent sentencing hearing, the District Court found him responsible for distributing 21 kilograms of heroin, which resulted in a base level offense of 36. *See* U.S.S.G. § 2D1.1(a)(5)(c)(2) (2013) (establishing a base offense level of 36 when the quantity of heroin is between ten and thirty kilograms). With the government's agreement, the District Court then reduced Morales's base offense level by two, to reflect the then-impending 2014 amendments to U.S.S.G. § 2D1.1 that reduced the base offense levels for most drug offenses. In addition, the Court found that Morales was a manager or supervisor in a criminal conspiracy of five or more individuals, which triggered an additional three-level increase in his offense level pursuant to U.S.S.G. § 3B1.1(b). With those adjustments, and with Morales's criminal history category of III, his guidelines range was determined to be 262 to 327 months.

Morales sought a downward departure from the guidelines under U.S.S.G. § 4A1.3, on the ground that his placement in criminal history category III overstated the seriousness of his criminal record. He argued that two of the crimes in his record were "low-grade misdemeanors" that did not merit the criminal history points that he received for them. (App. 298.) The District Court denied that motion, but noted that it would consider a "similar argument" when deciding whether to grant Morales a downward variance. After considering information about Morales, his background, and the

4

sentences received by his co-conspirators, the Court did, in fact, vary downward from the guidelines and imposed a sentence of 222 months' imprisonment.

Morales filed this timely appeal from his conviction and sentence.

## II.    DISCUSSION[3]

Morales argues that the District Court erred by (1) admitting Ramos's testimony about the shooting at his home; (2) refusing to grant his requested jury charge about circumstantial evidence; and (3) imposing a substantively unreasonable sentence. We consider those arguments in turn.

### A.    Prejudicial Testimony

Morales first contends that the District Court erred in admitting Ramos's testimony regarding the shooting at Morales's home because its probative value was substantially outweighed by its prejudicial effect, in violation of Federal Rule of Evidence 403. Pursuant to Rule 403, the District Court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. We review decisions to admit evidence under Rule 403 for an abuse of discretion. *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000). Indeed, we have repeatedly stated that the District Court deserves "very substantial discretion" when weighing the probative value of evidence against its prejudicial effect and that "Rule 403 creates a presumption of admissibility."

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231; we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

*United States v. Universal Rehabilitation Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc); *see also United States v. Caldwell*, 760 F.3d 267, 284 (3d Cir. 2014) ("When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling" (internal quotation marks omitted).). Only an "arbitrary or irrational" application of Rule 403 will justify reversing the District Court's decision. *Universal Rehabilitation*, 205 F.3d at 665; *see also United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (noting that an abuse of discretion occurs when "no reasonable person would adopt the district court's view" (internal quotation marks omitted)).

Morales's claim of error falls far short of that high standard. He says only that he "was not involved in any shooting or assaults with a deadly weapon," and that the testimony was admitted with the malign intent "to demonstrate that [he] was involved in murder in addition to drug dealing and should be convicted on unproven crime evidence." (Opening Br. at 10.) But that is a strange twist on the evidence. It is difficult to imagine that the jury heard Ramos's testimony and thought that Morales had shot up his own home, endangering his wife and children. There was no such prejudice from what Ramos said.

The better argument, and one that Morales made below, is that Ramos's testimony poisons the well against him by making it seem as though some unidentified parties might have had a lethal vendetta against him, perhaps making it more likely that he himself was engaged in illegal activity, like the drug trafficking conspiracy with which he was charged. Though that argument has more force, the District Court did not abuse its

6

discretion by rejecting it because the government's counterargument is stronger.  It

contends that Ramos's testimony established that there was a close and trusting

relationship between him and Morales, and that Ramos therefore would not falsely

implicate Morales as a co-conspirator.  According to the government, the fact that

Morales moved his family to live with Ramos after someone fired upon Morales's home

shows that there was that kind of relationship.  The testimony thus had probative value

insofar as it strengthened Ramos's credibility.  *See Universal Rehabilitation*, 205 F.3d at

665 (identifying as an example of probative value evidence that "allow[s] the jury

accurately to assess the credibility of the witness").

Moreover, the District Court reduced any potential for unfair prejudice by

instructing the jury not to "use th[e] evidence of a shooting as any indication at all of Mr.

Morales'[s] guilt."  (App. 234.)  We generally "presume that juries follow their

instructions."  *United States v. Lee*, 573 F.3d 155, 162 (3d Cir. 2009).  We also note that

Morales did not offer any stipulation or alternative that might have limited any prejudice.

We cannot say the District Court's decision to admit the testimony was arbitrary or

irrational, and thus the decision was not an abuse of discretion.

### B.    Jury Instructions

Morales next argues that the District Court erred in refusing his request to instruct

the jury that a defense to a criminal charge can be established by circumstantial evidence.

As with our review of the issue regarding Rule 403, we review for an abuse of discretion

the Court's refusal to give a particular jury instruction.  *United States v. Jimenez*, 513

F.3d 62, 74 (3d Cir. 2008).  We will reverse "only when the requested instruction was

7

correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant," *United States v. Leahy*, 445 F.3d 634, 651 (3d Cir. 2006), *abrogated in part on other grounds by Loughrin v. United States*, 134 S. Ct. 2384 (2014). Morales has failed to establish those elements.

The District Court instructed the jury to "consider all of the evidence that is presented in this trial, direct and circumstantial." (App. 227.) It defined circumstantial evidence as "evidence which, if you believe it, indirectly proves a fact." (App. 226.) The Court also told the jury that it could draw reasonable inferences from the evidence presented, and that "[t]he government may ask you to draw one inference and the defense may ask you to draw another." (App. 227.) In the jury instructions on circumstantial evidence and reasonable inferences, the Court did not make any reference to an affirmative defense advanced by Morales. That may have been because he advanced none. In response to Morales's belated request for an additional circumstantial evidence instruction, the Court noted that, had Morales presented an affirmative defense, a more specific instruction might have been warranted, but, as it was, Morales's requested instruction was adequately covered by the general instruction about circumstantial evidence.

Morales asserts that his "defense theory" was that he "was not directly involved in the drug conspiracy." (Opening Br. at 11.) That, of course, is not an affirmative defense. And Morales presents no examples of how he attempted to support that defense theory with any evidence, circumstantial or otherwise. His "theory" was simply a reliance upon

the government's burden to prove its case beyond a reasonable doubt and his assertion that they had failed to meet that burden. Because he did not advance an affirmative defense, or otherwise present a defense theory supported by evidence, his requested instruction was entirely unnecessary, and the District Court did not abuse its discretion in refusing to give it.

## C. Sentencing Appeal

Lastly, Morales argues that his sentence was substantively unreasonable. We review a district court's legal conclusions concerning the application of the sentencing guidelines *de novo*, its application of the guidelines to the facts for abuse of discretion, and its factual findings for clear error. *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009). In making his substantive unreasonableness claim, Morales advances three subsidiary arguments.

First, he argues that the District Court's finding of fact that the conspiracy involved 21 kilograms of heroin – when the charge itself only required the jury to find that the conspiracy involved more than one kilogram of heroin[4] – violated his Sixth

---

[4] Morales's crime of conviction required that the jury find that the conspiracy involved "1 kilogram or more of a mixture or substance containing a detectable amount of heroin … ." 21 U.S.C. § 841(b)(1)(A)(i). The Sentencing Guidelines specify varying offense levels based upon the quantity of controlled substances involved in that criminal offense. U.S.S.G. § 2D1.1(c). District courts often make factual determinations about drug quantities, in order to calculate a defendant's offense level and thus the advisory guidelines range. Here, the Guidelines in effect at the time of Morales's sentencing called for a base offense level of 36 because the offense involved 21 kilograms of heroin, which is at least 10 but less than 30 kilograms of heroin. *See* U.S.S.G. § 2D1.1(a)(5)(c)(2) (2013). At the time of Morales's sentencing, however, an amendment to the sentencing guidelines was pending (but not yet in effect) that would revise the Drug Quantity Table in U.S.S.G. § 2D1.1 and reduce by two levels the offense

Amendment rights pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490; *see also Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013) (holding, by extension of *Apprendi*, that "facts that increase mandatory minimum sentences must be submitted to the jury"). Here, the District Court's drug quantity finding did not affect Morales's mandatory minimum of ten years and did not increase Morales's statutory maximum penalty – nor could it, since his maximum penalty was life in prison. 21 U.S.C. § 841(b)(1)(A). Instead, the District Court's quantity finding affected only his non-binding guidelines range, rendering *Apprendi* entirely inapplicable. *United States v. Vazquez*, 271 F.3d 93, 98 (3d Cir. 2001) (en banc). The *Apprendi* argument is meritless.[5]

Next, Morales argues that the evidence was insufficient to support the District Court's finding that he was a supervisor or manager in a criminal conspiracy of five or more participants, a factual finding that triggered a three-level enhancement in his offense level. *See* U.S.S.G § 3B1.1(b). He contests both findings implicit in the three-level role enhancement: that the conspiracy involved five or more participants, and that

---

level applicable to many federal drug trafficking offenses. During sentencing, Morales received the benefit of that pending two-level reduction, on the government's motion.

[5] Morales also says in passing that the District Court's drug quantity finding was "speculative" and did not meet the preponderance of the evidence standard. (Opening Br. at 16.) We disagree. The District Court's finding was a conservative estimate based on the government's calculations from testimony admitted at trial. It was not clearly erroneous.

10

he had a managerial role in it. We do not believe the District Court's finding on either point was clearly erroneous. As to the finding that more than five individuals were involved, the record is clear that Morales was a participant in a significant heroin distribution conspiracy in North Philadelphia that involved many more than five people. As for his role as a manager, the application notes to the guidelines state that, to qualify for the enhancement, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id*., app. note 2. A defendant is a supervisor or manager of criminal activity if he or she "exercise[s] some degree of control over others involved in the offense." *United States v. Chau*, 293 F.3d 96, 103 (3d Cir. 2002) (citation omitted). Morales controlled two corners in North Philadelphia, and managed the heroin sales at those corners by Ramos and others. The District Court's factual findings underlying the three-level role enhancement were not clearly erroneous.

Third and finally, Morales argues – in a single sentence – "that his criminal history of IV over-represents the seriousness of his criminal history and should be reduced."[6] (Opening Br. at 17.) One problem with that contention is that Morales's criminal history category was III, not IV. Setting that aside, we lack jurisdiction to review a district court's refusal to grant an overrepresentation departure when the district court recognizes its authority to depart but exercises its discretion not to do so. *United States v. Stevens*, 223 F.3d 239, 247 (3d Cir. 2000). Here, the District Court declined to grant Morales's

---

[6] Such a reduction may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b).

11

request for a downward departure because it believed that the Guidelines' assessment of Morales's criminal history was "very accurate." (App. 302.) In refusing Morales's request, the Court never said or implied that it was without legal authority to grant the downward departure. Because the Court exercised its discretion when deciding whether to grant the downward departure, we are without jurisdiction to review that decision.[7]

In short, the District Court acted within its discretion in imposing Morales's sentence.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.

---

[7] We also note that the District Court took the same overrepresentation arguments into account when crafting Morales's sentence, which represented a forty-month downward variance from the bottom of his guidelines range.